UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DREDON DERONTE EDWARD,

Plaintiff,

v. Case No. 2:26-cv-579-SPC-NPM

SGT. L. RODRIGUEZ and
OFFICER DAVIS,

Defendants.
_______________________________/

**ORDER**

Plaintiff Dredon Deronte Edward, a convicted Florida prisoner in the Charlotte Correctional Institution, sues for federal civil rights violations under 42 U.S.C. § 1983. (Doc. 24) Edward alleges that correctional officers violated his constitutional rights when they removed his mat, pillow, and bedroll during an arctic freeze. (*Id.* at 4) An earlier screening order dismissed Edward's Second Amended Complaint without prejudice and with leave to amend. (Doc. 23) Edward now proceeds *in forma pauperis* on his Third Amended Complaint, which is before the Court for initial screening.[1]

Upon review, the Court concludes that Edward's Third Amended Complaint must be dismissed with prejudice. Because Edward again fails to

[1] A prisoner proceeding *in forma pauperis* will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the Court to dismiss a civil action prior to service of process if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

state a constitutional claim upon which relief may be granted, leave to amend would be futile.

## I. Third Amended Complaint

Edward alleges that on November 15, 2025, there was an "arctic freeze [and] the coldest winter ever recorded not just in Florida but in the world." (Doc. 24 at 5) On that date between 5:00 p.m. and 10:00 p.m., Sergeant L. Rodriguez was making his rounds when he decided to search Edward's cell. (Doc. 24 at 5) Sgt. Rodriguez ordered Officer Davis to place both Edward and his cellmate in handcuffs. (*Id.*) Although the officers found nothing in the cell for which they could discipline them, the officers placed Edward and his cellmate on "strip" restriction for 72-hours and removed their matt, pillow, and bedroll.[2] (*Id.*) Edward complained that he suffers from asthma and this restriction placed him "at risk for death from asthma attack or pneumonia." (*Id.*) The officers ignored Edward's complaints because they "wanted to see [him] suffer the harsh cold and possibly die." (*Id.*) Edward alleges that no other prisoners were subject this harsh treatment. (*Id.*)

Edward alleges that placing him on "strip" restriction during harsh weather violated his Eighth and Fourteenth Amendment rights. (*Id.* at 5–6) As a result of being without his mat, pillow, and bedroll, Edward experienced hip, lower back, and shoulder pain for which he has seen a physician. (*Id.* at 6)

---

[2] Edward makes no allegation that he was required to remove clothing. Rather, he alleges that the "strip" restriction meant that his matt, pillow, and bedroll were removed for 72 hours.

He received medication for his pain. (*Id.*) He seeks to recover $15,000 in compensatory damages, $15,000 in punitive damages, $20,000 in nominal damages, and mental health costs. (*Id.* at 6)

## II. Discussion

In its earlier screening order, the Court set forth the applicable law governing a claim that conditions of confinement violated the Eighth Amendment. (Doc. 23 at 2–4) The Court identified deficiencies in Edward's pleading and concluded that Edward's allegation "that he was deprived of his mat, pillow, and bedroll and forced to sleep on cold, hard concrete for four days . . . does not rise to the level of a constitutional violation." (*Id.* at 3) The Court reasoned that Edward's allegations that he was temporarily deprived of his mat, pillow, and bedroll, "indicate mere temporary discomfort and fail to suggest that the conditions of confinement posed an unreasonable risk of serious injury to his future health or safety." (*Id.*) The Court permitted Edward another opportunity to amend his pleading but cautioned Edward that "he should carefully read [the Court's screening order] to determine whether he will be able to state an actionable civil rights claim against any defendant." (*Id.* at 4)

The allegations contained in Edward's Third Amended Complaint (Doc. 24) vary only slightly from those in the Second Amended Complaint (Doc. 16). One difference is Edward's new allegation that there was an artic freeze on November 15, 2025, and that the incident occurred during the "coldest winter

ever recorded." (Doc. 24 at 5) In evaluating an Eighth Amendment claim, the Court must consider "both the severity and the duration of the prisoner's exposure to extreme temperatures." *O'Connor v. Kelley*, 644 F. App'x 928, 932 (11th Cir. 2016) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) and concluding that prisoner's placement on strip-cell status for longer than 72 hours during January in Florida, without a blanket, mattress, or bed and with only a "suicide shroud" did not violate the Eighth Amendment). "Merely showing that prison conditions are uncomfortable is not enough." *Id.* Federal courts routinely hold that confinement "without clothing (other than boxers), bedding, or hygienic materials for 72 hours . . . is not the type of extreme prison conditions that create a substantial risk of serious harm." *Woodson v. Whitehead*, 673 F. App'x 931, 932 (11th Cir. 2016).

Again, Edward alleges insufficient facts to state a plausible Eighth Amendment claim. Although he alleges that the strip restriction deprived him of his matt, pillow, and bedroll for 72 hours during an arctic freeze, he alleges "no facts demonstrating his exposure to 'extreme' conditions." *O'Connor*, 644 F. App'x at 932. He alleges "no details about the actual temperature of his cell or about the degree of cold he experienced." *Id*. (noting that the prisoner made "no allegation that ice formed in his cell"). Edward alleges no facts to show that the arctic temperature outside impacted the conditions inside his cell, besides that the conditions were generally cold. That Edward was "uncomfortably cold while on strip-cell status" is insufficient. *Id.*

Furthermore, although he alleges that he suffered pain from sleeping without a matt, pillow, or bedroll, these allegations are insufficient to show that he was deprived of the "minimal civilized measure of life's necessities." *See id.* (concluding that allegations of pain, swelling, itching, and numbness in feet and legs caused by strip-cell status were insufficient). Although Edward complained to officers that the strip restriction put him at risk for an asthma attack or pneumonia, he makes no allegation that he in fact suffered an asthma-related complication or pneumonia.

Additionally, in his Third Amended Complaint, Edward invokes the 14th Amendment for the first time and attempts to allege that he was treated differently than other prisoners. (Doc. 24 at 3) He alleges that "nobody else was forced to endure such condition." (*Id.* at 4) The Court generously construes these meager allegations as an attempt to allege that he was deprived of equal protection of the law. *See United States v. Jordan*, 915 F.2d 622, 624–25 (11th Cir. 1990) ("Federal courts have long recognized that they have an obligation to look behind the label of a [pleading] filed a *pro se* inmate and determine whether the [pleading] is, in effect, cognizable under a different remedial statutory framework.").

To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally

protected basis. *See Sweet v. Sec'y, Dept. of Corr.*, 467 F.3d 1311, 1319 (11th Cir. 2006). Edward's construed equal protection claim necessarily fails because he makes no allegation whatsoever that he was treated differently from other, similarly situated prisoners. In fact, Edward alleges that both he and his cellmate received the *same* treatment: they were handcuffed while their cell was searched and were returned to their cell on strip restriction without their matt, pillow, or bedroll. Edward makes no allegation that he was treated differently because of some form of invidious discrimination tied to a constitutionally protected interest. *See id.* at 1319.

## III. Conclusion

Generally, "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (quotations and alterations omitted). "A district court need not, however, allow an amendment . . . where there has been . . . repeated failure to cure deficiencies by amendments previously allowed . . . or where amendment would be futile." *Id.* (citations omitted). Because Edward fails to cure deficiencies in his Eighth Amendment claim, the Court need not allow another amendment. Furthermore, amendment of Edward's construed equal protection claim would be futile because "it appears beyond doubt that [Edward] can prove no set of facts in support of his claim which

would entitle him to relief." *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988).

Accordingly, it is now **ORDERED**:

1. Edward's Third Amended Complaint (Doc. 24) is **DISMISSED with prejudice** for failure to state a claim on which relief may be granted.
2. The Clerk is **DIRECTED** to enter judgment dismissing this action, terminate any pending motions, and to **CLOSE** this case.

**DONE AND ORDERED** in Fort Myers, Florida on September 8, 2026.

Sheri Polster Chappell
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record